Connolly, J.
Defendant Luis Rivas has been indicted for trafficking of a class B substance. The defendant moves to suppress all items police seized from the defendant’s person and the second-floor apartment at 161 South Main Street, Attleboro, pursuant to a search warrant issued by the Attleboro District Court. The defendant contends that (1) the affidavit of Attleboro Police Detective Robert N. Palmer supporting the application for the warrant failed to establish probable cause to issue the warrant, (2) the affidavit failed to meet the requirements of particularity in describing the premises to be searched, (3) the clerk/magistrate was not justified in issuing a “No-Knock” search warrant, (4) the clerk/magistrate was not justified in issuing an “any person present” search warrant, and that (5) the defendant does not fall into the “any person present” category. After a hearing and review of the warrant and its supporting affidavit, I deny the motion to suppress.
BACKGROUND
Detective Palmer’s affidavit sets forth the following. Detective Palmer works for the Attleboro Police Department, and has been a police officer for over 23 years. In the two weeks before January 26, 1996, the Attleboro Police Department had investigated numerous complaints about the second-floor apartment at 161 South Main Street, Attleboro (“the subject premises”). Unidentified neighbors and informants had made these complaints, stating that people entered and left the building at all hours, and that there was a heavy amount of foot and vehicle traffic in and out of the building.
*213 On January 19, 1996, Detective Palmer met with a confidential informant who said that unidentified Hispanic males were selling cocaine from the subject premises. The confidential informant stated that he had made numerous cocaine purchases at the subject premises in the past month, and described how it was done. The confidential informant said that he entered the right side door at 161 South Main Street, and went up to the second floor. There, the confidential informant stated that he knocked on the door of the subject premises and said, “Forty.” The confidential informant said that he then would push forty dollars under the door, and somebody on the other side of the door would slide a quantity of cocaine back under the door.
On January 19, 1996, Detective Palmer confirmed this information by purchasing cocaine from the subject premises. Detective Palmer entered 161 South Main Street through the right side door, and went to the second-floor apartment. There he observed a new all-weather white door with a peephole in it. Detective Palmer knocked on the door, and a voice with a Spanish accent answered, “What do you want?” Detective Palmer replied, “Forty,” and then heard a tap on the bottom of the door. Detective Palmer passed two twenty-dollar bills under the door, and, a short-time later, a small clear plastic bag containing a white powdery substance came through a space at the bottom of the door. Detective Palmer picked up the plastic bag, and left the subject premises. As Detective Palmer was entering a car to leave the area, he saw a person look out the front window of the subject premises. Tests conducted at the Attleboro police station showed that the white powdery substance tested positive for the presence of cocaine.
Within the twenty-four hours before applying for the search warrant, the confidential informant made a controlled buy from the subject premises. Before the controlled buy, Detective Palmer and another police officer searched the confidential informant and did not find any controlled substances on him. Then the police officers observed the confidential informant go to the right side entrance of 161 South Main Street, and enter the building. A short time later, the police officers observed the confidential informant leave the building, and saw that he did not meet with anyone until he met back up with the police officers. When they met up, the confidential informant gave the police officers a powdery substance that he said he had just purchased from the subject premises. The police officers conducted a field test on the powdery substance that showed it to be cocaine.
On January 26, 1996, Detective Palmer sought and received a search warrant. On the same day, the police executed the search warrant, and seized a quantity of drugs from the subject premises. The codefendant, Alfedo Creque, was arrested in a third-floor bathroom after exiting the second floor when the police arrived.
Approximately ninety minutes after executing the search warrant, and while the police were still searching the subject premises, Detective Palmer heard someone coming up the stairway. Detective Palmer left the apartment, and positioned himself in another stairway that enabled him to observe the second-floor hallway. Detective Palmer saw the defendant, Rivas, come onto the second-floor landing. At this point, Rivas was one foot from the open doorway of the subject premises. Detective Palmer then approached Rivas, took him by the arm, and led him that last step into the apartment. The police immediately searched Rivas, and seized a quantity of drugs that were on his person.
The structure at 161 South Main Street, Attleboro, is a three-story building, with one apartment on the first floor, and a second apartment on the second floor. The third floor has a door, and separate rooms, but no running water.
DISCUSSION
When challenging a search conducted pursuant to a warrant, the defendant has the burden of showing that the evidence was illegally obtained. Commonwealth v. Taylor, 383 Mass. 272, 280 (1981). In this case, the defendant alleges that the magistrate lacked probable cause to issue the search warrant. To establish probable cause, the affidavit supporting the warrant must “contain enough information for the issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that they may reasonably be expected to be located in the place to be searched.” Commonwealth v. Cefalo, 381 Mass. 319, 328 (1980). In reviewing a finding of probable cause, only facts revealed on the face of the affidavit and any reasonable inferences to be drawn from those facts may be considered. Commonwealth v. Fenderson, 410 Mass. 82, 88 (1991); Commonwealth v. Allen, 406 Mass. 575, 578 (1990).
“A controlled purchase of narcotics, supervised by the police, provides probable cause to issue a search warrant.” Commonwealth v. Warren, 418 Mass. 86, 89 (1994) (citing Commonwealth v. Luna, 410 Mass. 131, 134 (1991)). Here, Detective Palmer, the affiant and a police officer for over 23 years, personally bought the cocaine from the subject premises. Detective Palmer does not rely on an undisclosed informant to establish probable cause. He personally went into 161 South Main Street, up to the second-floor apartment, and made a purchase of an item that tested positively as cocaine. This first-hand information contained in the affidavit is a sufficient showing of probable cause to issue a search warrant.
The defendant also alleges that the search warrant affidavit does not sufficiently describe the location to be searched because the affidavit refers to the street number as “161 South Main” nine times, and “166 South Main” nine times. “The relevant inquiry with respect to the adequacy of a search warrant’s descrip *214 tion of the premises to be searched is whether the description is sufficiently complete to allow the executing officer to locate and identify the place to be searched with reasonable effort, and whether there is any reasonable probability that a place other than the one intended to be searched under, the warrant might be mistakenly searched.” Commonwealth v. Walsh, 409 Mass. 642, 645 (1991); Commonwealth v. Gonzalez, 39 Mass.App.Ct. 472, 476 (1995). Here, Detective Palmer is the person who signed the affidavit in support of the search warrant, and is the officer who executed the warrant. “Because the affiant was the same person who executed the warrant, there was no reasonable probability that another premises might be mistakenly searched.” Commonwealth v. Rugaber, 369 Mass. 765, 769 (1976); Gonzalez, 39 Mass.App.Ct. at 477. The description of the premises was adequate.
The defendant raises the argument that a no-knock warrant was not justified, and that even if it was, the officers were required to reappraise the situation and knock before entering the subject premises. Here, the affidavit cites fear for the safety of the officers, the need for surprise, and the danger that the contraband would be destroyed. Those facts, along with the remainder of the affidavit, are sufficient to justify the unannounced entry. See Commonwealth v. Rodriguez, 415 Mass. 447, 450 (1993). A reappraisal of the situation by the police officers before executing the warrant would have revealed no change in circumstances requiring the police knock and announce themselves.
The magistrate issued a search warrant that properly contained an “any person present” clause. Detective Palmer’s affidavit provided the issuing magistrate with probable cause to believe that persons found on the premises might be in possession of the items listed in the search warrant. In determining whether the “any person present” clause was properly included in the search warrant, courts should look at whether “the premises or area to be searched are small, confined, and private; the nature of the criminal activity is such that the participants (in general) constantly shift or change so that it is, practically, impossible for the police to predict that any specific person or persons will be on the premises at any given time; and the items specifically described in the warrant as the target of the search are of a size or kind which renders them easily and likely to be easily concealed on the person.” Commonwealth v. Smith, 370 Mass. 335, 345 (1976).
Here, the affidavit states that the premises are a second-floor apartment, which supports the inference that the place is small, confined, and private. The affidavit recounts transactions with unknown individuals behind a closed door at the subject premises. Further, from the size of the substance, which the affidavit says was slid under the door, the magistrate could readily infer that the controlled substance could be concealed on a person.
Lastly, defendant Rivas asserts that he was not “present” at the premises to be searched, and therefore was not within the reach of the warrant. Thus, Rivas maintains that any evidence seized from his person must be suppressed. Rivas was apprehended at the threshold of the second-floor apartment, less than one footstep away from entering the subject premises. To say that Rivas was headed to the third floor is disingenuous. The third-floor rooms have no running water. “[EJvidence obtained from persons neither named nor described in a warrant, but who were subjected to a search on the strength of ‘any person present’ language, was not suppressed in situations where it was simply not reasonable to suppose that anyone on the scene would have arrived by accident and been unaware unlawful business was going on.” Commonwealth v. Baharoian, 25 Mass.App.Ct. 35, 39 (1987) (taking note of caselaw in other jurisdictions).
Here, ninety minutes after their entry into the apartment, the police officers were still in the process of searching for items delineated in the search warrant. Rivas entered the building, came up the stairway, and approached to within one foot of the open doorway of the subject premises. In coming to within one foot of the subject premises’ open door when there was nowhere else Rivas reasonably could have been headed except into the subject premises, Rivas established a relationship with the apartment that constitutes a “presence.” Therefore, the police officer’s search of Rivas is valid under the “any person present” clause of the search warrant.
ORDER
For the foregoing reasons, it is hereby ORDERED that the motion to suppress of the defendant, Luis Rivas, is DENIED.